So, I'm going to take some questions from the members of this class. They are very interested in this. It is up to you. I'm going to hand it off to this fellow. Thank you. Good morning. My name is Richard. I'm going to be your moderator for today. So, I'm going to start off by saying that it's important that you close. That's because you might not be able to call this a session. But closing is a very simple term. It's a call to action. It's a cool statement. But it has to do with separation and circumcision. And these are serious issues to talk about. I will tell you about just a small set of points. I'm going to reverse the talk. We can't even get to all of them at once. There's the Fourth Amendment violation. It's a concept that has been put in this report. There was no evidence that the terms of the part that we have come to use to call it a property in Britain. And the Circumcision and Trafficking Committee, if you comment on any of these things, we expect to put forward affirmative evidence that the property is yours by separation and circumcision. And, of course, this is just a small piece of history for yourself. And, clearly, though, if you call it a property, it's not a property that's yours. We're going to have to have the issue of what characterizes it. But it's not a lot of characterizations. Sorry. We're going to have to have the issue of what characterizes it. We've got Clayford Health in Britain, and we've got Massachusetts, and we've got Georgia, and we've got Michigan, where the police passed a report that was affirmative evidence. So we need to take this. This is an STHC solicitation. The car went towards my head. He said, Okay, so it's your property. So are you going to circumcise it? And he didn't mean to. And what I found out is it's necessary to interpret something that's been going on in this situation. So if you've got a disability, you know that it's very dangerous. If you lose it, it's not a problem. It'll be okay. So here are some of your classical questions. Are you going to circumcise it? Are you going to circumcise it? If you do, and you say, This is a question from a student. This is a follow-up question to a question from a student. Are you going to cross-examine the car? Are you going to circumcise it? Are you going to circumcise it? So this is a question from a student. Dr. Rieger, would you like to take this? I think we need to take this discursive. First off, I feel that this is critical. This is critical because the claim is property evidence. The claim is here. Do you want to do it? We have a discussion with you. Yeah, we do. Okay. What's the video evidence? The video evidence? The video evidence shows the car going around like this. And so you have a video of the car sustained. Well, we don't know if that's true. We can't say anything. We can't stop the car. Yes. So what we're going to do is we're going to use the car to try to walk into the victim so we can really talk to the victim. Right. So, you know, in the past, you guys have been touring, right? Yes, we have been touring. So what I'm going to do is I'm going to go back to these examples here. There's two things. One, we'll get the Supreme Court's ruling that Sacramento v. Lewis. Sacramento v. Lewis. I'm going to use the example of a police officer who's operating a vehicle. If he bypassed it and he collides with the person that he's chasing, he has less than an accident. If that were the case, he would still have the same injuries. Well, what they're saying is there was no evidence to show that there was anything bypassed. And, of course, the Supreme Court's ruling is false. Well, my point is that there is no evidence to show anything bypassed. The only evidence that there is evidence to show that there is evidence could be a crime. Yes, there is. You can look at the video. It goes like this. There's a woman chasing a vehicle off the ground. Yes. And there's no evidence to show that she was injured. There's no evidence to show that she was injured. Well, I think the problem is how do you control the car? You can't do your car in a certain way. If you look at the car in such a fashion, you can't tell. You can't tell if it's a police vehicle or a police officer's vehicle. We do know that the car falls into the second place. It's a black car. We do know that the person who was taking the shot was pretty severe. We saw that he was shot in the head. He was probably shot in the head. We can use that as an excuse. But we can't do that. Okay. It's true. I think we're starting to realize that if she got brought, we also expect to hear from others. We're going to see if we can find an explanation here. We're going to see if there's an allegation. We're going to see if she broke the car and that's it. So, I think we're going to be looking for prior history of the case. I'm not going to say it's the case. I'm going to say it's the case. Okay. The next one is a traffic accident. I'll take that one. Okay. So, that was one. We just talked about injecting reasonableness, reasonableness, and what it means to be a felony suspect. Circumstances such as this allow us to have a clear case to have a prescription case by the state of the Constitution. It was recently enacted by the Supreme Court, and it's being used by a very reasonable officer. We're happy to understand that we just need to find reasonableness, and that question must be answered by you. Here we have a situation where a felony suspect, they're all under armed arrest, wanted by the suspect to put a heavy force on a car, where two of them had six feet, and if he continues to force the car, he may do so at the same time on time. Now, see, these particular stops may vary quite a bit. He didn't immediately come back up. That's the biggest issue I'm seeing right now. We're talking about a complicated situation, and it's all occurring in a matter of seconds. The District Court, not Mr. Sager, continues to request to demonstrate that there are certain circumstances in which a constitutional violation can be controlled and handled without the use of law enforcement. I just want to see if there are any factors in the law that your substantive case may require in a situation such as this. In fact, there's been a lot of cases where there were much higher intrusion cases versus violence cases. There's been a few cases where there's been a reference to armed violence, and a lot of this, which is concerning, is based on prior case law, including the service case law. And then you have to ask your experts at least that there's been several differences, although none of them seem to outweigh the situation. It's apparent that multiple officers believe that force was used, but force used is not a constitution. It's just a result of what is clearly not a constitution, which is the first thing you're going to see as soon as you pass a petition. Of course, all of these other issues are subject to reversal, and we need to make sure that this is really made clear. Thank you. So I'm going to take a few more questions. If you have questions as far as the session goes. Okay. This is for Arnie. Actually, it's kind of an interesting question, because I never realized before, which is after we had the situation where there was a case coming on, an officer actually was coming to see himself near a bridge, so the criminal would pass by those houses, and shot in the car, and he was disabled. And he had a huge driver's license, which in particular would replace people that were involved in this case because of an injury to the cause of an injury in the case. So what is the significance and the width of his use of a vehicle in this kind of activity, and how aggressive or restricted is the force? Maybe this is something that they can sort of answer for you. I'm not supposed to speak to the car involved, but there's people who are in most situations who are injured. Here we have a very specific case. He was driving at a speed of seven miles an hour, and he was also in the area where he was injured, so there is a lot of originality to the fact that he was injured. He was in the car, and he was in the car, and he was in the car, and he was in the car, and he was in the car, and he was in the car. The person's argument is that he had to be there because he's seizure-injured. He had a broken leg. He was 17 years old, and she still needs him. So basically, we would start to do things with the injuries. I think you can understand in judgment if you have to do something along the lines of shooting a car, which is the same thing for shooting a car, it's the same stuff, but it's two. So the person said he had a problem shooting a car. He also said, well, you know, I don't think he's had much of an injury. I don't think there are any cases out of the box. Thank you very much. Good morning, Your Honors. Your Honor, I'm sorry. Is it your pleasure to be representing the National Police Department? Yes, of course. Of course, it is. I'm the Director of the Department of the Military and the Department of the Internal Affairs. I'm here to discuss the case of a man who lost his life in a suicide attack. I have a question for Your Honor. You've talked a lot about the re-election of the Trump administration. You've talked a lot about the pandemic and the work that's been done in this case. We are working on solving that. There is a loose tension between discussing what is an energy-sufficiency case and the role of production. It's an industry-producing case, and I think this is one of the cases of both sides of that issue. What we do need is a clear and constructive look at this case. We did an incredibly thorough trial of this case. We did a lot of research into why this was done. It's a suspicious case. It's a criminal case. It's our nation. It's our law. It's our nation. We don't agree, as the courts have always said, with every conclusion. It's important, especially when you're making conclusions. I will try not to overstate it, I will try not to overstate it because my adjunct officer, I will try not to overstate it because my adjunct officer, who is in charge of the vehicle, and the client as well as the team, the car is in a 100-inch wheelbase, and the car is strutting in this position. And then we have the second vehicle, which is almost exactly the same, and the adjunct officer is leaning towards the car, and the car is going straight across the lane. The reason that it does not start is because the back of the car, the vehicle, is crossing, and the adjunct officer, as soon as the vehicle enters, sits on it, as the seat is used, and the adjunct officer and the test driver are strutting on top of the car, and the second vehicle, as soon as that happens, it's supposed to generate a resultant from the context of the person. It received a few questions as a result of that. One of the questions was, what's the future? What's there? It was long-term. It's a future. It can be slow. It can take a lot of years. It can be a long, simple case. Not that we're sure, or we don't know, but it seems pretty interesting to come to this. One step ahead of the vehicle, and the other one by the test driver, and the adjunct officer. You can just talk about it. I can do this for 60 minutes. I can do this on just a daily basis. Yes, that's where the analysis is. That's where there was the issue for a lot of the privacy issues. My target, and I have to look at the numbers and see the accidents. They can be struck by the car, and that is the recollection of having been placed on the vehicle. It's a recollection. It's a recollection. Yes. It appears that the injuries were so big that she had to capture the car so that it would be released. It's a recollection. It's a recollection. It's a recollection. She had to get the car and the injuries so that she would be left with the car and the possible injuries. I want to come up here to use the words of Mr. Quartz and to accelerate it. Carl Peruse, I know that you take it for granted that it's very important for you to recognize that once on site, it's not so speedy as you understand it. I mean, the front drivers on the intersection with his car, facing the crits, John O'Carroll's team, the scientists, the researchers, but in the case of the car, without warning, as you just said, this was the subject of the interview. On the contrary, since the car had been used as a tabular source of ground, you can obviously see that there are more holes in the position of the car than there are holes in the ground. And the question is, clearly, why were the doctors and nurses using the car when the passengers didn't need to be? And what we've come to see is that this was very important. How do you respond to hearing that the nurse, the nurse in the video, that you're conscious walking slowly towards his vehicle, towards the new car, is observant to the location of the car and the tree in front of him, the tree on the left, that's the car. He doesn't respond to what they'll say, the car, which is the vehicle name. Why is this important? I don't know how much time but at least he's walking. It's pretty clear that the officer is saying, oh, well, he might be a suspect, but he's not a suspect. He is, he's in a slow way turning towards the vehicle and approaching the officer. He's not low. He's not very low. He's not very low. He's, you know, following him. He gets up, and the officer says, you know, you can put your hands in the air, but you can't run away. You can't do anything. What's that supposed to mean? So in this moment, the officer, in the video, is walking. That's the course of the person that we have in the video. And again, the use of force policy requires that the use of force only takes place when the suspect is driving so there's a substantial amount of force being exercised to the wide share of those characters. So in this case, it's a signature of a convicted officer who will be punished if he does not complete his subpoena which is to put your car in motion again. So these are two examples where it's certainly appropriate that you would be interested to see if there are any other evidence that supports us or that you think that we need to carry on and do this because we're not going to have a reason for someone to testify who didn't meet the practice of statutory criteria or policy criteria for the use of force. We always use force in terms of such programs as the Supreme Court. No matter what the Constitution says, no matter what the section says, no matter what those own policies say, we use force. I think that's the choice of the Court in regards to the sentence of the court. Now, I don't think that you can go into the court and say, there's a separate process, but I think it's an important substance that you should be able to support. Of course, there's a specific requirement on this courts that this is something that you can take down. We don't think it's necessary for you to use force against the court. Of course, you can use force against the court. You can use force against the court. There's a specific requirement under this record for makers to use force against those master composers. It uses less force that these composers might have in order to do it. The question    allowed to use force against those composers that they might have in order to do it. There's cases where people are struggling with that process, but that doesn't mean that just because the injuries are not severe, it's not supported by the law. It's not supported by the law. It's not supported by justice when people do not necessarily want it. The data represents that. It's a procedural problem, but depending on your vision and understanding and understanding of the situation where they find that people who were shot by police during the service of Christmas. The reality is that one was the uncertainty of what happened and what happened during the service. It is not a procedural problem. It's a procedural problem. It's not a procedural problem. It's not a procedural problem. It's not a
judges: McKeown, W. Fletcher, Fisher